docket I'm lucky in that regard but we have two cases right now first one well please be aware of our time clock even though we there are only three cases total on the docket this morning we ask you to start winding up when the two minute yellow light comes on and conclude your argument when the red light signals unless you're answering a question from the court we also very much appreciate record citations when those are applicable first case is number 1840884 United States v. Moton and we'll hear from Mr. Byrne please the court issue one is a sufficiency of the evidence claim in this case this is a drug trafficking case and the issue here is specifically whether or not the government proved you had a reasonable doubt the knowledge component whether or not the defendant Mr. Moton whether or not it was proved beyond a reasonable doubt that Mr. Moton knew that the substance he was dealing with was a schedule one or two controlled substance or an analog of one of those substances in this case there was a man named Javed Akter who was at the top of this drug trafficking organization and he was orchestrating the manufacture the packaging the distribution and the sale of synthetic cannabinoid by employing and managing several people what's important in this case is that his business model was taking pains to compartmentalize duties on a need-to-know basis so some of the participants in this organization were not told the purpose of their job was to be involved in drug dealing for example Mr. Malik Ataru Malik he was a co-defendant who testified a trial he testified that he would have people for example rent storage facilities but would not tell them why so you brought up the knowledge requirement right off the bat and I agree with you that that's the key issue on sufficiency under McFadden I want to hear what your view is about what the government is required to prove with respect to knowledge is the government required to prove that the defendant knew that the substance was forbidden under the CSA and the Analog Act which I think is one possible reading of McFadden or is the substance was forbidden by federal drug laws which I think is a position that is taken by the Second Circuit in the DeMott case what what's what's your view of the best reading of McFadden I didn't argue that the jury instructions were wrong in this case and I think that the jury instructions are correct and if we look at the jury instructions it requires that the government proved on a defendant knew that the substance was in a drug schedule one or two or that the drug was an analog of one of those two of a substance listed in one of those two schedules I think that that's I think that's a clear plain reading of the law I think that the jury instructions were correct in this case and those were the jury instructions that the government was proponent that so you're saying that's not even an issue in this case I don't I mean it wasn't raised by either side I think that it's clear that Mr. Moton had to know that it was what he was dealing with was a controlled substance and one of those two schedules or it was an analog well the government in McFadden the Supreme Court also says you can prove that by circumstantial evidence yes I agree with that okay so in footnote one of McFadden court says you can you can prove this knowledge through circumstantial evidence through quote a defendant's concealment of his activities and evasive behavior with respect to law enforcement why isn't there a great deal of evidence of that why isn't there a great deal of evidence of that well there is a great deal of evidence so why doesn't that satisfy the knowledge component I don't think so I think that in this case you have to look to the perspective of the defendant and here there are two things to look at one is the sort of the business model of this drug organization and secondly sitting in a in a house that has no furniture in it and he's doing something chemical to package these little packets of something getting paid 25 cents per packet and he packs 200,000 of these at and he's not paying taxes on any of it or getting any kind of employment form and I don't care how little English he speaks his family spoke English and this had got to reek of something foul as the court used to say I think that's a fair statement it does reek of something foul but what what else do you do with small pockets it's not Alka-Seltzer well I would say mr. Moton said that he thought it was incense and and something important to note that the government they offered just an inference he actually drove several miles out of the way to do to dispose of some part of the particles etc which had the very smell etc etc plainly a jury could determine there that he knew that what he was engaged in was not legal why isn't that enough in the context of this case the packaging and so forth and further that there were drugs well there are a variety of things that are illegal that are not listed as a controlled substance for example it could have been that these substances were some sort of tobacco product tobacco is not listed as a controlled substance okay I mean I think that that would be a logical conclusion he he was not involved in manufacturing the product insofar as the illegal substance so there was a gentleman named Haroon who would come to that house on Mulholland Drive and he would come and he would spray that it's synthetic cannabinoid on the on the product that was not what mr. Moton was doing he was at he was packaging the it so you know that there is you know we've all heard of the illegal there is an illegal tobacco trade I mean that may be something that was very common in India I don't know you know interestingly no one not from the fence and not from the government asked mr. Moton during the whole trial during his testimony what did you think you were dealing with was never asked so it wasn't proven and I think that's a big problem I think that the government could have had the opportunity to reveal his mental state with respect to his understanding of this chemical the government produced three different experts to explain to the jury what this chemical is it took three experts to do that so especially for someone who's not from the United States who hadn't been in the United States very long to understand what a synthetic cannabinoid is it's not self-evident and it wasn't proved I think from the substance from the he ran a garment factory in India did he not yes your honor so he couldn't have been too stupid well I'm sorry he he did not my understanding of the testimony is that he didn't run a garment factory he was actually a driver so he would deliver jeans from the manufacturer to the retailers that was him he was a delivery driver that's my understanding so he's not a very sophisticated person the synthetic cannabinoids were in 2000 is working illegally was he not yes your honor yeah so I mean there's something obviously there's something afoul but has to be the evidence the these controlled substances well does the jury have to infer that he knew he was violating federal as opposed to state law is that an issue oh and I think it could be an issue if there's a difference between the state and all substances is there I'm sorry is there does Texas criminalize that this particular substance well particularly with these synthetic cannabinoids I honestly I'm not sure I don't I've never actually compared the to control substances acts between the state and the federal you don't think it matters though well I think I think it does matter it has to be proven beyond a reasonable doubt that the substance that the person knew was a federally controlled substance and that's what that's what the jury instructions were no that's a controlled substance I'm sorry yes to know that it is a controlled substance under schedule one or two of the Federal Controlled Substances Act I think when the substance is an analog that knowledge requirement is met if the defendant knew that the substance was controlled under the CSA or the analog act even if he did not know its identity correct that's that's what and that's what the jury was told I assume right so how would he know someone would have to tell him someone would have to tell him and and there wasn't any evidence at all about what anyone told him about what he was dealing with how does this case differ from the legion of cases we have where people bring drive cars across the border they go into secondary inspection some illegal drug is found in the car and they claim ignorance of what the drug was but they were paid a thousand dollars to drive across the border how does this differ in in point of knowledge from all those cases well you know there is a willful blindness aspects to these cases to like for example at your checkpoint case right that's a common thing but that was not an issue in this case at all that the jury was not instructed on willful blindness so the law that the jury had in its hands was what's written in McFadden do you want to move on to your other issues yes your honor issue two is the calculation of the relevant conduct in this case so important thing I think to note here is that the pre-sentence report the probation office possibly in consultation with a judge or and certainly possibly as a result of the probation offices understanding of the judges preferences the pre-sentence report made the deliberate decision to hold mr. Moton accountable only for quantity seized what's important also important on this point is that the jury found mr. Moton not guilty of conspiracy and I believe it's page 82 of the record there was a jury note where the jury was asking about whether or not conspiracy required whether or not it was enough what I can't remember the exact jury note but basically it's it seems clear that the jury was concerned about the time frame with respects to the conspiracy charge they found him not guilty of conspiracy between February 16 and April 2017 so that all we were looking at all the defense and the government everybody was looking at where the amount seized now one of the amount seized was from mr. Malik's proceeds from drug trafficking it was extrapolated into a large amount of controlled substance actually eighty-eight percent of the total amount of relevant conduct and mr. Moton was held accountable for that would be I think pretty clearly permissible because there wasn't any testimony or evidence about when it was that mr. Malik acquired that money as a result of drug trafficking mr. Malik was involved in trafficking and controlled substances at least a year before mr. Moton was involved in it the rest of the remaining quantities was also off thirty percent of the seized quantity was unaccounted for let me ask you though there was no objection to this at sentencing correct it was not argued at sentencing the judge go ahead it was written it was a defense counsel did not argue it so another way to look at it is only 11% of the relevant conduct I mean I'm looking at the objection to the PSR and it says defendant objects to paragraph 25 Moton does denies and does not recall testifying that he labeled 200,000 packets he did not knowingly package any legal substance he was told that the material was incense so to the extent you're arguing quantity here it would seem to center on whether he claimed that he didn't package may not a package 200,000 packets I would consider that a preserving the argument that the relevant conduct was not correct essentially the argument and and although it wasn't argued as as in as much detail as I've argued it I would say that that still preserves it for appeal I think you've done a great job but you've expanded the argument I think one can argue that anyway yes your honor may I proceed to the last issue of about 20 seconds very very quickly I think that the I actually think this third issue is a pretty good issue too in particular if you look at the Barnes case that's that's cited to and I'm out of time and I will you can bring that up on rebuttal yes your honor okay thank you mr. gagliardi may it please the court Seth gagliardi for the United States your honor this case presents three issues on appeal well there's sufficient evidence presented by the government satisfy the knowledge requirement under McFadden for a controlled substance analog cases our first issue the second issue is whether the court erred in the drug quantity calculation to reach the maximum of 38 base offense level on this case by the preponderance of the sufficiently reliable evidence and the third issue is whether the two-level enhancement under the maintaining a residence or facility for the production or manufacturer and controlled substance case I do expect the court's focus on this issue on these issues will primarily be to the first issue so I'll proceed to that one immediately McFadden does have an indeed a unique knowledge element and knowledge requirement for controlled substances cases as your honor pointed out judge Duncan it does require that controlled substance analog cases the defendant has to have that knowledge that it's a controlled substance and that can be found in one of two ways the defendant has to know that that substance is treated as a controlled substance under the Controlled Substance Act and the controlled substance analog in a couple of different ways specifically he can know whether the specific analog he's dealing with and if it's meant for human consumption whether it's similar to a schedule 1 or schedule 2 controlled substance as intended to have the same hallucinogenic stimulant or depressant effects as that controlled substance in this case the government did clearly established that by substantial circumstantial evidence as you pointed out judge Duncan and judge Jones and specifically in this case there is a lot of evidence as to the packaging material the packaging material include these 10 as you pointed out the testimony at trial by Mr. Moton himself was that he packaged as many as 75,000 to 200,000 of these packets and affixed those stickers well the trial testimony by the officers and the exhibits themselves show that those stickers had specific chemical flavorings they said things like blue cotton candy skittles bubblegum but importantly they also had a 6x or 10x symbol on it and they had an imprint of an insignia which looks similarly significant to a marijuana leaf insignia on those stickers it would be incredible to believe that somebody would be affixing 75,000 to 100,000 of those stickers and not notice the sticker itself having what looked like a marijuana leaf on it and showing a potency which the officers did testify that those 6x 10x symbols were meant to convey the potency and the effect that those drugs would have on a user now Mr. Moton's defense was presented to the jury in this case and the standard is just that let me ask you a question on page 25 of your brief you cite to two or three pages of the record Moton admitted that the subterfuge involved was due to the illegal nature of the of the synthetic cannabinoid operation. Malik testified it was known that these products were illegal but you're saying Moton said he didn't know that. Moton claimed his defense at trial was just fell off the turnip truck but the jury completely disregarded that and the jury's credibility determination is there in the place to do that the court usually does not question the credibility determination in this case. While Mr. Moton denied the knowledge Mr. Malik admitted that it was common knowledge that these products were sold and the clandestine nature of the way in which Mr. Moton conducted his activities is evidence of the fact that he was aware that this was an illegal substance and treated as such. Is it also illegal under Texas law? It is illegal under Texas law and that was testified to by Officer Guerra in the trial testimony that it was illegal under Texas law. Now we're in federal court federal jurisdiction under federal law so that is not controlling in this case but Officer Guerra testified that it was common knowledge the co-defendant Mr. Malik testified that it was common knowledge that these materials were illegal and they were controlled they were sold out of the back of smoke shops and tobacco shops and the activity that Mr. Moton took in this case he operated out of blind drops storage facilities. As your honor pointed out Judge Duncan he went off-site to visit a gas station to throw away some of the I'm sorry Judge Higginbotham that was that was you he drove off-site to a dumpster at a gas station to dispose of these products that in fact were later tested and had the FUB-AMB materials in them and the scientists did Dr. Goselin and and Mr. Wong testified that the materials did test positive and that they were controlled substances and that is not disputed in this case at all. The knowledge and the circumstantial evidence of the clandestine activities in a house by himself that one of the storage facilities has an office front they don't conduct business there they were never seen conducting business there they conduct these blind drops storage facilities or in the trunk in Mr. Malik's car where they don't meet face-to-face he just walks up to a vehicle and drops a bag of several hundred of these packets in it and then closes the trunk and then Mr. Malik is seen coming down later to transfer those activity and the steps taken the black traffic bags where no one can see your product to hide it. So you've obviously read McFadden and you're familiar with the Second Circuit's decision in DeMott where Judge LaValle and the concurring judges are grappling with well what does McFadden actually mean with respect to the knowledge requirement and is it knowledge of the CSA and the Analog Act or is it sort of a more generalized knowledge of federal drug laws. Does this case not present any such difficulty in your view? No, Your Honor. I don't believe it does present any such difficulty and as you pointed out at footnote one in McFadden the circumstantial evidence is the key thing is that knowledge that this is a controlled substance and it can be acknowledged. Now when you get down to the second element of knowing the specific analog or that it is an analog and then the requirements we think we also satisfied that component that he knew it was an analog. He's in this house they're using respirators, they're using acetone, there are these packages of the core components, there are these cement mixers on the on the address at Mulholland where the core chemicals are being mixed with this leaf. They're and they have pictures of the home that we've cited in our brief. I believe it's on page 24 and 29 of our brief. We cite 24 and page 6 actually, Your Honor, of our sites are Record on Appeal site 844 through 850 which is evidence within the home. There's also evidence within the home at Record on Appeal 868 through 879. All these pictures of these massive tubs of the over 580 pounds of controlled substance that was seized, finalized controlled analog substance. They also had massive tubs of the leaf and so this leaf is mixed on the cement mixer, there's ventilation going up the chimney through this empty home, there's a thousands of these stickers in the production room, there's a packet sealing area and again, Mr. Moton testifies himself that originally they operated out of another home but they were scared when a neighbor came in and asked what was going on in the home. So they changed houses over the Mulholland. A little question in my mind but a juror could infer there's illegality here. The difficulty is the step up to the specific analog and the best thing going for the government I guess is simply that there's a lot more knowledge and awareness on the street than there is of somebody sitting at home. So judges may not even be familiar with these things because they don't happen to see these cases. They may not even know what a cannibal is and never heard of the stuff. So that step up is there. I point to you, the PSR couldn't even convert these things correctly. They said that it was accountable for 434,319 and they had him accountable for that but then identified only 298,000 grams of synthetic that were seized by the police and those numbers don't even work out. Yes, your honor. The government, you've got the workers down there trying to figure out how this stuff works. Now that's quite a different step but I'm just telling you that the analog add-on to the Controlled Substance Act has a level of technicality to it and some of these things that are out there in Seoul, people don't know where they are or not. People don't know what vaping, what it is, a lot of things going on out there that are hurtful and harmful. Well you know what, if somebody gave me a little package that had a little marijuana leaf on it and a funny looking symbol, I'm thinking what am I supposed to do with this? Is it dog food? Is it something, is it a variety of exotic salt? I think, hmm, that looks suspicious. It ain't Alka-Seltzer as I said. Yes, your honor and again in this case that standard review is whether a rational juror using common sense and reasonable inferences can find beyond a reasonable doubt that the evidence was presented. What if you were in Colorado? Well if you're in Colorado that's an entirely different case. Marijuana leaf symbol there might just mean good business, right? And it's not in the record, your honor, but it's still legal under federal law in Colorado. What would you have to prove then is what I'm getting at here. We're not in Colorado. Well just for the sake of a hypothetical, just out of my curiosity, would you have to prove something additional? No, I think you'd have to prove the elements of McFadden. You're in a federal court under federal charges. You'd have to prove knowledge, but I think that you'd still have to do that. You'd still be in a house where they're manufacturing chemicals that are plainly not marijuana. So that's... Yes, your honor. Sure, but I thought that the evidence that one of the points that you pointed to was a picture of a marijuana leaf. Yes. Could we move on to the question of the sentence? I was surprised the government didn't argue plain error. Yes, your honor, and I understand that because it wasn't a major issue at the actual sentence hearing as far as the drug quantity calculation. They didn't even argue it. And that goes to what Judge Higginbotham just raised, the difficulty in some of the evaluation. But as the trial prosecutor, Mr. Lance Watt, pointed out, who's here today, even under a low estimate of 55,000... It's harmless error. I don't think you can argue that it was not error. I think that there was some difficulty in the math, certainly, Judge Higginbotham. I agree when you point that out in our footnote. However, the quantities here were in such excess of the 90,000 kilogram threshold to reach that 38 base offense level that it really is harmless error. Because just 55,000 of these 10 kilogram or 10 gram packets would max out Mr. Moton at above that 90,000 kilograms. And in his own trial testimony, he states that he packaged anywhere between 75,000 and 200,000 of these packets. So I think that's why it wasn't argued at sentencing, your honor. And we could have pressed for plain error. I think you're right, Judge Jones. But we were conservative in clear error. It's also a close question to me whether we need to review it at all, because it seemed like a factual determination. Yes, your honor. Not a legal determination. Yes, your honor. And so I'd briefly like to move on to the third issue, maintaining control of residence. We're going to ask you one irrelevant question, and that is, why is the conversion factor so high? At 167 per, I think it's so high, your honor, because this is a significantly dangerous drug, as was testified to by Officer Guerra and by the scientific experts, because it's not controlled by the FDA. It is brought in or mailed in from China, typically, in these packets. And it's mixed with no controls in a, you know, house off Mulholland in southwest Houston with — So if it's not adulterated in some way, is it supposed to reproduce a high like marijuana, or is it supposed to do something more potent? No, your — well, more potent, that would go to the stickers and the effect that it's supposed to have. It's supposed to have more of a high. But the scientific evidence that was testified to by Dr. Goselin was that it is even more, and it triggers the same receptors as the THC. So it's supposed to produce that elevated effect from THC, and it's advertised to do that by the packaging. Now, as to the maintenance of the house and the storage facilities, it was not disputed at trial and not testified to at trial that Mr. Moten had any problem getting into either the storage facility or the home. He came and went as he chose to. He had keys to the residence, although he parked down the street, he said, for efficiency reasons, which makes no sense, or even one street over in one case. But no one controlled his access to the home. He was there for several hours in the morning and several hours in the evening on his own. There was an electrical bill or gas bill in his name at the home, and the leasing and rental agreement at the storage facility was in his name. He would come and go and do these dead drops in the storage facility and then pick up cash in grocery bags at the facility. He was entrusted in that home. If you take the low end of what Officer Gayton testified these drug seats in the home, if we're talking about anywhere between $2.6 million and $10 million of product, it cannot credibly be argued that he didn't have maintenance of those facilities and access to those facilities in an unrestricted nature. Mr. Byrne, when his time was running out, was going to talk to us about the Barnes case, which he then talked to us about on rebuttal. Do you have any pre-buttle of that? I don't, Your Honor. We would submit on our briefs and ask this Court to affirm the judgment and sentence in this case. All right. Thank you, sir. Thank you. Mr. Barnes? Excuse me. May I proceed, Yes, Your Honor? With respect to the Barnes case on the third issue, so it's Guzman Reeves is the fifth circuit case where I think the Court can find all the law it needs to make a ruling on issue three. The Guzman Reeves case cites the Barnes and refers to the fact that the issue here is the maintenance of a premises. That's the issue. And the Fifth Circuit looks to the Stash House statute, which is 21 U.S.C. I think it's 856. So you go and look at that law. And you go to the Barnes case. And this is a case where there were two appellants, Jones and Barnes. They were helpers of the sort of leader figure in the case. He was selling drugs at the house. So this gentleman Hall, he was the person that was maintaining the residence, okay? The Fifth Circuit stated in Barnes, thus the government may have failed to introduce sufficient evidence to show that Barnes and Jones themselves violated the Stash House statute. So what we have is we have helpers that may not, and being a helper itself may not be enough to maintain a premises. Now, the Fifth Circuit and Barnes decided that the evidence was enough to find the two appellants, Jones and Barnes, for aiding and abetting, okay? It's different in the guideline situation. For example, in a drug-trafficking organization, there may be someone in the organization that gets a leadership role enhancement under the guidelines. The leader's helpers are not going to get the leadership enhancement because they aided and abetted in the leader's leadership. It just doesn't work that way. So in this case, what we have is Mr. Moton is clearly a helper in a compartmentalized, need-to-know basis only organization. So he was a helper going to the house. I don't think that's sufficient in this case. Although he was there a lot, his name was on an electric bill, but there were other people whose names were on, for example, the rental of storage spaces. But those were people who either maybe didn't even know what was going on. The fact that he had his name on an electric bill is actually evidence that he was just a mere helper because the purpose of putting people's names on different things was to hide the people higher up in the organization. I wanted to deal with the packaging that the government brought up, the marijuana leaf symbol. You know, I've had the privilege of representing people who use drugs and manufacture and distribute them for a while. You can go to a grocery store, especially a convenience store, and there where the tobacco products are, they have these zigzags, cigarillos, strawberry flavor, lemon-lime flavor. People buy those. I don't think people actually buy those to smoke them. I think they buy them, and they cut them open, and they put marijuana in them, and they roll them up because the marijuana leaf has a flavor to it. So the fact that it has a marijuana leaf on it, that doesn't necessarily say that it's a marijuana product. Yeah, but that was just one thing that the government pointed to. There's the 6X, 4X potency value designations. What about that? Well, the thing is, is that, I mean, exactly, what about that? Mr. Moton was never asked about that. They never put a bag in front of Mr. Moton and said, hey, what did you think this was? No one ever asked. The evidence was just simply not presented in court. It wasn't given to the jury. So we actually don't know. Nobody ever asked Mr. Moton, what did you think you were doing? It was never asked. So I think that's a really important thing with respect to proving his knowledge. He was making $20,000 at minimum in four months. Well, I think his testimony was that he was making between $2,000 and $2,500 a month. That's still $10,000 in four months. But he was working almost full time. I thought you said he worked, I thought someone said he worked a few hours in the morning and a few hours in the afternoon. Correct. It's almost full time. So he wasn't making much money. But he wasn't supposed to work at all. He's not charged with that one. Thank you, Your Honors. All right. You're court appointed, Mr. Byrne, and we very much appreciate the service you've done.  All right.